**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| City of Avon, | ) | CASE NO. 1:15 CV 155 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Avon Baseball L.L.C., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

### Introduction

This matter is before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint without Prejudice (Doc. 6). This case arises out of a dispute between the parties to a Stadium Lease. The issue is whether a dispute resolution clause in the subject lease is mandatory. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff City of Avon (Avon or the City) filed this Complaint against defendant Avon Baseball L.L.C. (Avon Baseball) in the Lorain County Court of Common Pleas. Defendant removed the case to this Court on the basis of diversity of citizenship. The Complaint alleges the following.

1

Avon and Avon Baseball entered into a lease on June 16, 2008 for a stadium (the Stadium Lease) which has been the home field for the Lake Erie Crushers since 2009. Article VI, Section 6.1 of the Stadium Lease governs advertising rights. Article VI, Section 6.1(e) of the Stadium Lease provides for a marquee sign to be located adjacent to the stadium and Interstate 90. Under that section, Avon agreed to bear the expense of the marquee while Avon Baseball held the exclusive right to sell advertising on it. Avon Baseball agreed to remit to Avon 100% of the net marquee revenues which were to help Avon pay for improvements to the stadium and premises. Avon Baseball has failed to remit to Avon the net marquee revenues for the years 2011, 2012, 2013, and 2014.

On November 11, 2014, Avon sent Avon Baseball a letter declaring Avon Baseball in default of the Stadium Lease and demanding that it cure the default. Although Avon sent the letter to the address identified in the notice provision of the Stadium Lease, it came back undeliverable. On November 21, 2014, Avon re-sent the letter to Avon Baseball's office in Avon, Ohio. On December 3, 2014, representatives of Avon met with representatives of Avon Baseball to discuss the default. The 15 day cure period provided for in the Stadium Lease has expired and Avon Baseball has failed to cure the default.

Evidence presented to this Court shows the following.[1] Article XI, Section 11.4 of the

---

[1] Defendant's motion is made pursuant to Rules 12(b)(1) and (6). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Autumn Health Care of Zanesville, Inc. v. Centers for Medicare and Medicaid Services,* 2015 WL 1046271 (S.D.Ohio 2015) (quoting *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir.2003)).

Stadium Lease states:

**Section 11.4 Dispute Resolution.**

(a) Except as otherwise provided herein, any dispute, controversy or claim (individually and collectively, a "Dispute") arising under this Lease shall be resolved in accordance with the procedures set forth in this Section 11.4.

(b) In the event of a Dispute between the Parties relating to this Lease and upon the written request of either Party within five (5) business days after receipt of the written request, each of the Parties shall appoint a designated representative who has authority to settle the Dispute. The designated representatives shall meet as often as they reasonably deem necessary in order to discuss the Dispute and negotiate in good faith in an effort to resolve such Dispute. The specific format for such discussions will be left to the discretion of the designated representatives; provided, however, all reasonable requests for relevant information made by one Party to the other Party shall be honored.

(c) If the Parties are unable to resolve issues related to a Dispute within ten (10) days after the Parties' appointment of designated representatives as set forth above, the Parties may pursue the assistance of a mediator at a mutually agreeable location. Fees and expenses of the mediator shall be split evenly between the Parties.

(d) Any Dispute that the Parties are unable to resolve through the dispute resolution mechanism within thirty (30) days after the Parties['] appointment of representatives may be submitted by a Party to arbitration in accordance with the following procedures:

> (1) Either party may demand binding arbitration by filing a written notice thereof in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA'). Absent an agreement among the Parties to the contrary, with respect to any Dispute related to the Premises Construction...
>
> (2) All arbitration proceedings under this Lease shall be conducted in the City of Elyria, Ohio.  All decisions and awards issued in any arbitration proceedings under this Lease shall be final...
>
> (3) Nothing in this Section 11.4 shall preclude a Party from pursuing any equitable relief either prior to or during the pending of any Dispute.

(Compl. Ex. A)

According to Avon's Finance Director William Logan, he sent an email on September

3

30, 2014 to Kathleen Hudson of the Lake Erie Crushers requesting a meeting to discuss the net marquee revenues issue. On October 23, 2014, Ms. Hudson responded that she was working with I. Steven Edelson, the principal of Avon Baseball, on firming up a date for the meeting. (William Logan aff.)

Avon's Law Director John Gaisor avers that he sent the November 11, 2014 letter to Edelson via overnight Unites States Express Mail. The letter stated that Avon Baseball had failed to remit the net marquee revenues for the years 2011, 2012, 2013, and 2014, which contractual breach rendered Avon Baseball in default of the Stadium Lease. The letter was re-sent on November 21.  According to Gaisor, USPS tracking showed that the letter was delivered successfully. On December 3, 2014, representatives of Avon (which included Mayor Brian Jensen as Avon's designated representative, Logan, Gaisor, and others) and representatives of Avon Baseball (which included Edelson and Hudson) met at Avon City Hall to discuss the net marquee revenues issue.  (John Gaisor aff.; Compl. Ex. B) According to Gaisor, Logan, and Mayor Jensen, Edelson promised at that time that Avon Baseball would be providing Avon with documentation relating to the marquee sign revenues.  The documentation was never provided and default has not been cured. (Logan, Gaisor, and Jensen affs.)

According to Hudson (Avon Baseball's Controller) and Edelson, in late November 2014, Edelson called Jenson to schedule an informal meeting to discuss revenue initiatives and any net marquee revenues due.  At that point, Avon Baseball had not received any letters from Avon claiming default.  The meeting was scheduled for December 3.  Edelson did not request the meeting pursuant to § 11.4(b) of the Stadium Lease and did not understand it to be

4

such. Nor did Avon advise that it intended the meeting to be pursuant to that section. Prior to the meeting, neither party sent a written request to appoint designated representatives with settlement authority, Avon Baseball did not appoint such a representative, and Avon never advised Avon Baseball that it appointed a designated representative. (Hudson aff.; Edelson aff.)

By letter dated December 12, 2014 from Edelson to Mayor Jensen, Edelson acknowledged the earlier meeting and stated that Avon Baseball was "currently putting the appropriate information together so we can meet again to resolve these issues in the very near future." Edelson additionally stated,

> In the spirit of meeting to work out a resolution and pursuant to Section 11.4(b) of the Lease, we request that the City of Avon appoint a designated representative who has the authority to settle any disputes under the Lease, including any current dispute regarding Net Marquee Revenues due. I will serve as the designated representative for Avon Baseball L.L.C.
>
> We propose that the parties' designated representatives schedule a meeting to discuss any issues regarding the Net Marquee Revenue. Given the upcoming holidays, and the fact that Avon Baseball, L.L.C. cannot calculate Net Marquee Revenue for 2014 until after the end of the calendar year, we suggest that this meeting be arranged during the latter part of January. We are certainly amenable to coming to an agreement regarding any Net Marquee Revenue due under the Lease with a goal of resolving any issues by the end of January 2015.

(Doc. 6 Ex. B)

Edelson addressed a second letter to Mayor Jensen, dated December 19, 2014. Therein, Edelson stated that Avon Baseball had just received Avon's November 11 letter on December 17, 2014. Edelson further stated,

> In the November 11 Letter, the City contends that Avon Baseball, L.L.C. owes the City certain payments for Net Marquee Revenues due under the Lease from 2011 through 2014. Based on our prior correspondence, we understand that the City desired to meet with us to discuss the amount of such payments. To that end, in my recent

5

> letter to you dated December 12, 2014, (the 'December 12 Letter'), I indicated that I would be happy to meet pursuant to Section 11.4(b) of the Lease to have that discussion and reach an agreement as to any amounts due.  We believe that this is the dispute resolution mechanism provided for and required by the Lease, as well as the best mechanism to resolve this dispute efficiently.  Accordingly, please let us know if you are agreeable to such a meeting to take place on **January 21, 2015**, between the parties' designated representatives.  At this meeting, we are prepared to provide the City with the backup documentation for all Net Marquee Revenues from 2011 through 2014, and tender a check to the City related to the same.
>
> Additionally, the City's November 11 Letter purports to serve as a Notice of Default under the Lease; however, we are not satisfied that the November 11 Letter comports will all of the notice requirements set forth in Section 12.13 of the Lease.  In any event, the timing of the fifteen (15) days to cure any purported breaches, referenced in Section 11.2(a) of the Lease, begins to run from *receipt* of a Notice of Default.  As you know, we did not receive the November 11 Letter until yesterday.  Therefore, even if the November 11 Letter constituted a proper notice of Default under the Lease, our cure period would continue to run until January 1, 2014 [sic].

Edelson concluded that Avon Baseball could not finalize the 2014 calculations until the end of the year, reiterating the need for the January 21, 2015 meeting. (Doc. 6 Ex. C)

According to Edelson, Avon did not respond to either of Edelson's letters and never designated a representative as requested in the December 12 letter. (Edelson aff.) Avon filed this Complaint in state court on January 12, 2015.  Two claims are asserted.  Count One alleges breach of contract.  Count Two demands an accounting.

This matter is now before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint without Prejudice.

**Discussion**

Defendant contends that the Complaint must be dismissed because plaintiff failed to follow the mandatory dispute resolution process set forth in the Stadium Lease prior to filing the Complaint. Plaintiff does not dispute that dismissal without prejudice is appropriate where a mandatory dispute resolution clause is involved but asserts that it has complied with the

6

dispute resolution process contained in the Stadium Lease and the arbitration and mediation provisions are discretionary, not mandatory. For the following reasons, the Court agrees with Avon Baseball that the Stadium Lease provides a mandatory dispute resolution process and that Avon failed to follow it. Consequently, this matter must be dismissed without prejudice so that the parties may engage in that process.[2]

Avon argues that the dispute resolution process is discretionary given language in the lease that the dispute *may* be submitted to mediation or arbitration once a dispute is not resolved. However, § 11.4(a) states that a dispute "shall be resolved in accordance with the procedures set forth in this Section 11.4." Therefore, the plain language of the Stadium Lease indicates that the dispute resolution process is mandatory.

Avon further contends that it complied with the dispute resolution process because it understood the December 3 meeting to satisfy that process. According to Jensen, he was the City's designated representative and Edelson was Avon Baseball's designated representative. Once resolution was not achieved at that meeting, Avon was free to file the lawsuit. This Court agrees with Avon Baseball that the December 3 meeting did not satisfy the requirements of § 11.4.

As referenced above, § 11.4(b) states in part:

> In the event of a Dispute between the Parties relating to this Lease and upon the written request of either Party within five (5) business days after receipt of the written request, each of the Parties shall appoint a designated representative who has authority to settle the Dispute.

---

[2] Accordingly, defendant's alternative request that the Court stay this matter until the parties have exhausted the dispute resolution process is moot. Further, the Court declines to award attorney's fees and costs to Avon Baseball incurred in connection with the filing of this motion.

7

Avon asserts in its brief that it "understood" the December 3 meeting to satisfy the dispute resolution process. But, there is no evidence of such or that the City issued a "written request" invoking § 11.4(b). Avon's November 11 "Notice of Default" letter (which the evidence shows Avon Baseball did not receive until December 17) merely indicates that the dispute had arisen but did not request a meeting of designated representatives. Additionally, the affidavit of Avon Finance Director Logan states that he sent an email to Kathleen Hudson requesting a meeting to discuss the net marquee revenues issue, and on October 23 she responded that she was working with Edelson on firming up a date for the meeting. The affidavit further states that the representatives met on December 3. However, Edelson's affidavit specifically states that in late November 2014, he called Mayor Jensen to schedule an informal meeting to discuss, *inter alia,* the revenues issue. The meeting was scheduled for December 3.

Notwithstanding who actually requested the December 3 meeting, there is no evidence that designated representatives were appointed prior thereto. Although Mayor Jensen avers that he was the City's designated representative and Edelson was Avon Baseball's designated representative, there is no evidence that the representatives were appointed "upon the written request of either Party." Rather, the evidence shows that it was not until the letter of December 12, that Avon Baseball's Edelson expressly requested, pursuant to § 11.4(b), that Avon appoint a designated representative with authority to settle the dispute. Edelson stated that he would serve as the designated representative. The letter further proposed that the designated representatives schedule a meeting and that it be arranged for the latter part of January 2015. Avon did not respond to the letter.

8

Additionally, the evidence shows that the December 3 meeting did not satisfy the further requirement of § 11.4(b):

> The designated representatives shall meet as often as they reasonably deem necessary in order to discuss the Dispute and negotiate in good faith in an effort to resolve such Dispute. The specific format for such discussions will be left to the discretion of the designated representatives; provided, however, all reasonable requests for relevant information made by one Party to the other Party shall be honored.

The affidavits of Logan and Jensen merely state that during the December 3 meeting, Edelson promised to provide documentation relating to the net marquee revenues which was never provided. However, Hudson's and Edelson's affidavits make clear that the parties agreed that any calculation of the revenues would not be available until January 2015. Edelson's December 12 letter indicated that Avon Baseball could not calculate the revenues for 2014 until after the calendar year and, consequently, he suggested that the meeting be scheduled in late January. Likewise, Edelson's December 19 letter reiterated that the 2014 calculations could not be finalized until the end of the year which justified the proposed meeting date of January 21. Avon did not respond to either of the letters requesting that the meeting be scheduled. Therefore, there is no evidence that the parties met "as often as they reasonably deem necessary" to resolve the dispute. The December 3 meeting was the sole meeting. The only evidence shows that the parties agree to schedule a follow-up meeting which Avon refused to do. Thus, the Court cannot conclude that Avon "negotiated in good faith in an effort to resolve" the dispute over the revenues. Accordingly, Avon did not follow the mandatory dispute resolution process.

### **Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint

9

without Prejudice is granted.

       IT IS SO ORDERED.


                                /s/ Patricia A. Gaughan
                              PATRICIA A. GAUGHAN
                              United States District Judge

Dated: 4/15/15